# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

In re:                                              )
                                                    )
**CARLOS L. BELTRAN RODRIGUEZ**                      )        Case No.: 09-06437-BKC-ESL
d/b/a **LAS PIEDRAS SERVICE STATION**                )
d/b/a **JUNCOS SERVICE STATION**, and                )        Chapter 11
**INES GONZALEZ ROSADO**,                            )
                                                    )
     Debtors in possession                        )
_____/

## PLAN OF REORGANIZATION

**LORENZO PALOMARES P.S.C.**
**Attorneys & Counselors at Law**
Lorenzo J. Palomares-Starbuck, Esq.
421 Muñoz Rivera
Midtwon Bld, Penthouse 1001
Hato Rey, PR 00918
(787)753-7441
Fax: (787) 622-2540

Counsel for Debtors in Possession

# TABLE OF CONTENTS

**ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS** _____ 1
- A.   Rules of Interpretation, Computation of Time and Governing Law _____ 1
- B.   Defined Terms _____ 1

**ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS** _____ 6
- A.   Administrative Claims _____ 6
    1.   Payment of Administrative Claims _____ 6
    2.   Bar Date for Administrative Claims _____ 6
    3.   Professional Compensation _____ 6
- B.   Priority Tax Claims _____ 7
- C.   Statutory Fees _____ 7
- D.   Cure Claims _____ 7

**ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS IN THE DEBTORS** _____ 7
- A.   Classification of Claims and Interests _____ 7
- B.   Classes _____ 7
    1.   Class "1" Secured Claim of Popular Auto _____ 7
    2.   Class "2" Secured Claim of Ocasio _____ 8
    3.   Class "3" Secured Claim of FBPR _____ 8
    4.   Class "4" Secured Claim of CRIM _____ 8
    5.   Class "5" Secured Claim of IRS _____ 9
    6.   Class "6" Secured Claims of WBPR _____ 9
    7.   Class "7" Secured Claims of BPPR _____ 11
    8.   Class "8" General Unsecured Claims _____ 11
    9.   Class "9" Other Priority Claims _____ 11

**ARTICLE IV. ACCEPTANCE OR REJECTION OF EACH PLAN** _____ 12
- A.   Voting Classes _____ 12
- B.   Acceptance Requirements _____ 12
- C.   Nonconsensual Confirmation _____ 12

**ARTICLE V. MEANS FOR IMPLEMENTATION OF THE JOINT PLAN** _____ 12
- A.   Overview of Means for Implementation _____ 12
    1.   Overview of the Transaction _____ 12
    2.   Restructuring _____ 12
- B.   Post-Effective Date Means for Implementation of the Plan _____ 12
    1.   Existence of the Debtor's Businesses _____ 12
    2.   Duties and Powers of the Plan Administrator _____ 12
    3.   Closing of the Debtors' Chapter 11 Case _____ 13
    4.   Method of Distribution Under the Plan _____ 13
    5.   Monetization of Assets _____ 13
    6.   Books and Records _____ 14
    7.   Reporting Duties _____ 14
    8.   Tax Obligations _____ 14
    9.   Oversight of the Plan Administrator _____ 14
    10.   Distributions for Claims Allowed as of the Effective Date _____ 14
    11.   Distributions on Account of Claims Allowed After the Effective Date _____ 14
    12.   Delivery of Distributions; Undeliverable or Unclaimed Distributions ____ 14
    13.   Compliance with Tax Requirements/Allocations _____ 15
    14.   Disallowance of Claims _____ 16
    15.   Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes _____ 16
- C.   The Proceeds Account _____ 16

    D.      Conditions for Release from Escrow of Net Proceeds; Non-Ordinary Course Payments_____16

    E.      Events of Default; Failure to Timely Satisfy the Requirements of the Plan_____17

          1.     Events of Default_____17

          2.     In the Events of Default or Failure to Timely Satisfy the Requirements of the Plan____17

**ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES_____17**

    A.      Assumption and Rejection of Executory Contracts and Unexpired Leases_____17

          1.     Rejection of Executory Contracts and Unexpired Leases_____17

          2.     Assumption of Executory Contracts and Unexpired Leases_____18

          3.     Approval of Assumptions_____18

    B.      Claims on Account of the Rejection of Executory Contracts or Unexpired Leases_____18

    C.      Procedures for Counterparties to Executory Contracts and Unexpired Leases Assumed
          Pursuant to the Plan ____19

**ARTICLE VII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE_____19**

    A.      Waiver of Conditions_____20

    B.      Effect of Non-Occurrence of Conditions to the Effective Date_____20

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS_____20**

    A.      Compromise and Settlement_____20

    B.      Debtor Releases and other Agreements_____20

          1.     Creditors, Agents, Advisors and Professionals_____20

    C.      Exculpation_____21

    D.      Discharge of the Company_____21

    E.      Preservation of Rights and Causes of Action_____21

          1.     Preservation of All Causes of Action Not Expressly Settled or Released by the
              Debtors_____21

    F.      Preservation of Rights and Causes of Action Not Settled or Released by the Creditors_____21

    G.      Injunction_____22

**ARTICLE IX. BINDING NATURE OF PLAN_____22**

**ARTICLE X. RETENTION OF JURISDICTION_____22**

**ARTICLE XI. MISCELLANEOUS PROVISIONS_____23**

    A.      Modification of Plan_____23

    B.      Revocation of Plan_____24

    C.      Successors and Assigns_____24

    D.      Reservation of Rights_____24

    E.      Further Assurances_____24

    F.      Severability_____24

    G.      Service of Documents_____24

    H.      Filing of Additional Documents_____25

ii

*In re Beltran, et al.*, 09-06437-BKC-ESL          The Law Offices of Lorenzo Palomares P.S.C.

                                         Attorneys & Counselors at Law

Carlos L Beltran Rodriguez and Ines Gonzalez Rosado, the debtors in possession in the above-captioned chapter 11 cases, hereby respectfully propose the following plan of reorganization under chapter 11 of the Bankruptcy Code:

## ARTICLE I.
## RULES OF INTERPRETATION, COMPUTATION OF TIME,
## GOVERNING LAW AND DEFINED TERMS

A.      *Rules of Interpretation, Computation of Time and Governing Law*

1.      For purposes of this document: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.      Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the territory of Puerto Rico, without giving effect to the principles of conflict of laws thereof.

B.      *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.      *"Accrued Professional Compensation"* means, at any given moment, all accrued, contingent and/or unpaid fees and expenses (including, without limitation, success fees) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code and were rendered before the Effective Date by any Retained Professional in the Chapter 11 Cases, or that are awardable and allowable under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by a Final Order, all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount). To the extent that the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

2.      *"Administrative Claim"* means any Claim for costs and expenses of administration of the Estates under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses, incurred after the applicable Commencement Date, of preserving the respective Estates and operating the businesses of the Debtors; (b) Allowed Professional Compensation; (c) all U.S. Trustee Fees; and (d) Allowed claims under section 503(b)(9) of the Bankruptcy Code.

3.      *"Administrative Claims Bar Date"* shall have the meaning set forth in Article II.A.2 hereof.

4.      *"Allowed"* means an Allowed Claim in a particular Class or specified category.

1

5.      *"Allowed Claim"* means any Claim, other than a Disputed Claim, (a) with respect to which proof of such claim was timely and properly filed, or if no proof of claim was timely and properly filed, which is listed by any of the Debtors on their respective Schedules as liquidated in amount and not disputed or contingent, and in either case, (i) as to which no objection motion or adversary proceeding concerning the allowance thereof or request for estimation has been interposed on or before the Effective Date or the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or order of the Bankruptcy Court or (ii) to the extent any objection, motion or adversary proceeding concerning the allowance thereof or request for estimation interposed in accordance with clause (i) has been determined by a Final Order in favor of the holder of such Claim; or (b) to the extent allowed by a Final Order or the provisions of the Plan.

6.      *"Allowed Professional Compensation"* means all Accrued Professional Compensation allowed or awarded from time to time by an order of the Bankruptcy Court or any other court of competent jurisdiction.

7.      *"Ballots"* means the ballots accompanying the Disclosure Statement upon which holders of impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the procedures governing the solicitation process.

8.      *"BPPR"* means Banco Popular de Puerto Rico.

9.      *"Bankruptcy Code"* means title 11 of the United States Code.

10.     *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Puerto Rico, having jurisdiction over the Chapter 11 Case and, to the extent of any withdrawal of the reference under section 157 of title 28 of the United States Code and the Order of the United States District Court for the District of Puerto Rico pursuant to section 157(a) of title 28 of the United States Code.

11.     *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075 and the general, local and chambers rules of the Bankruptcy Court.

12.     *"Business Day"* means any day other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

13.     *"Cash"* means the legal tender of the United States of America or the equivalent thereof, including, without limitation, bank deposits, checks and cash equivalents.

14.     *"Causes of Action"* shall mean all actions, causes of action, Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based on whole or in part upon any act or omission or other event.

15.     *"Chapter 11 Case"* means the above-captioned chapter 11 case, case number 09-06437-BKC-ESL.

16.     *"Claims Bar Date"* means, as applicable, (a) December 10, 2009, (b) the Government Bar Date, or (c) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for the filing of certain Claims.

17.     *"Claims Objection Deadline"* means, for each Claim, the Confirmation Date, unless otherwise ordered by the Bankruptcy Court.

18.     *"Claims Register"* means the official register of Claims maintained by the Voting and Claims.

19.     *"Class"* means a category of holders of Claims, as set forth in Article III hereof, pursuant to section 1122(a) of the Bankruptcy Code.

20.     *"Commencement Date"* means the date on which the Debtors commenced the Chapter 11 Case.

2

21. *"Confirmation"* means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

22. *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

23. *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

24. *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended from time to time.

25. *"CRIM"* means Centro de Recaudacion de Ingresos Municipales.

26. *"Cure Claim"* means a Claim based upon a monetary default by any Debtor under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors under section 365 of the Bankruptcy Code.

27. *"Debtor"* means one of the Debtors, in their individual capacity as a debtor in the Chapter 11 Case.

28. *"Debtors"* means, collectively: Carlos L Beltran Rodriguez and Ines Gonzalez Rosado.

29. *"Debtors in Possession"* means, collectively, the Debtors, as debtors and debtors in possession in the Chapter 11 Case.

30. *"Disclosure Statement"* means the *Disclosure Statement of Plan of Reorganization* dated January 29, 2010, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law.

31. *"Disputed Claim"* means any Claim that is not yet Allowed.

32. *"Distribution Agent"* means Debtors in Possession in their capacity to make or to facilitate distributions required by the Plan.

33. *"Distribution Date"* means any of the Initial Distribution Date or the Periodic Distribution Dates.

34. *"Distribution Record Date"* means the date for determining which holders of Claims are eligible to receive distributions hereunder, which shall be the Confirmation Date.

35. *"Effective Date"* means the day selected by the Debtors that is no earlier than the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VII hereof have been satisfied or waived.

36. *"Encumbered Assets"* means any of the Debtors' assets encumbered by a Lien.

37. *"Estate"* means the estate created for the Debtors in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

38. *"Event of Default"* shall have the meaning set forth in Article V.E.1 hereof.

39. *"Excluded Claims"* means any Causes of Action released in accordance with Article VIII of the Plan.

40. *"Exculpated Parties"* means, collectively, the Debtors' agents, advisors and professionals employed as of the Petition Date or retained or employed during the Chapter 11 Case, in their capacity as such, except solely to the extent that any such agent, advisor or professional has executed a tolling agreement with the Debtors preserving

3

the Debtors' rights to pursue certain causes of action.

41. *"Exculpation"* shall have the meaning set forth in Article VIII.C hereof.

42. *"Executory Contract"* means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

43. *"Final Order"* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument or rehearing, has expired and no appeal or petition for certiorari or other proceeding for a new trial, reargument or rehearing has been timely made, or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or, on and after the Effective Date, the Plan Administrator, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or otherwise shall have been dismissed with prejudice.

44. *"FBPR"* means FirstBank Puerto Rico.

45. *"General Unsecured Claim"* means any unsecured Claim against any Debtor, that is not a Priority Tax Claim, Administrative Claim, or Accrued Professional Compensation Claim.

46. *"Government Bar Date"* means February 2, 2010.

47. *"Initial Distribution Date"* means the date occurring as soon as reasonably practicable after the Effective Date when distributions under the Plan shall commence.

48. *"IRS"* means the Internal Revenue Service.

49. *"Lien"* has the meaning set forth in section 101(37) of the Bankruptcy Code; *provided, however,* that any lien avoided in accordance with sections 544, 545, 547, 548 or 549 of the Bankruptcy Code shall not constitute a Lien.

50. *"Net Proceeds"* means the proceeds derived from the sale of any of the Debtors' assets, or assets controlled by the Debtor, less any costs related to such sale, whether those costs are subtracted from the proceeds at the time of or after the closing of such sale, and satisfaction of superior interests in such assets.

51. *"Ocasio"* means Ramon Lebron Ocasio.

52. *"Other Priority Claim"* means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim.

53. *"Periodic Distribution Date"* means, unless otherwise ordered by the Bankruptcy Court, the first Business Day that is 90 days after the Initial Distribution Date, and for thereafter, the first Business Day that is 90 days after the immediately preceding Periodic Distribution Date.

54. *"Plan"* means this *Plan of Reorganization* dated January 29, 2010, as it may be amended, supplemented or modified from time to time, including, without limitation, by the Plan Supplement, which is incorporated herein by reference.

55. *"Plan Administrator"* means the Person to be designated by the Debtors, as the employee or fiduciary responsible for implementing the applicable provisions of the Plan.

56. *"Plan Documents"* means the documents contained in the Plan Supplement.

4

57. *"Plan Releasees"* shall have the meaning set forth in Article VIII.B.1 hereof.

58. *"Plan Supplement"* means the compilation of documents and forms of documents, schedules and exhibits to be filed no later than ten Business Days before the Voting Deadline, as such compilation may be amended, supplemented or modified from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules. The Plan Supplement shall include, without limitation, the following documents: (a) the list of Executory Contracts and Unexpired Leases to be assumed and the proposed Cure Amount; (b) the agreement or agreements establishing the Proceeds Account; and (c) the designation of the Plan Administrator. The Debtors will file the Plan Supplement, but shall not be required to serve the Plan Supplement, except that any exhibit relating to Cure Claims or another equivalent document detailing Cure Claim information will be served (at least in relevant part) on the non-Debtor counterparties to contracts or leases to be assumed and the Debtors will serve the Plan Supplement on the U.S. Trustee.

59. *"Popular Auto"* means Popular Auto (Popular Leasing).

60. *"Priority Tax Claim"* means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

61. *"Proceeds Account"* means the escrow or escrows that shall be created to hold the Net Proceeds of the monetization of certain assets the Debtors, or assets controlled by the Debtors, pending the distribution of such Net Proceeds by the Distribution Agent, and any other Cash funded by the Debtors to satisfy the requirements of the Plan.

62. *"Proof of Claim"* means a proof of claim filed against any of the Debtors in the Chapter 11 Case.

63. *"Pro Rata"* means the proportion by amount that an Allowed Claim or in a particular Class bears to the aggregate amount of Allowed Claims Claims in that Class, or the proportion by amount that Allowed Claims or in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

64. *"Retained Professional"* means any Entity: (a) employed in these Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered before the Effective Date, pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code, but not including those entities whose compensation or reimbursement is allowed pursuant to Article II.A.3 hereof.

65. *"Schedules"* mean, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as such schedules may have been amended, modified or supplemented from time to time.

66. *"Secondary Liability Claim"* means any Claim that arises from a Debtor being liable as a guarantor of, or otherwise being jointly, severally or secondarily liable for, any contractual, tort or other obligation of another Debtor, including, without limitation, any Claim based on: (a) guaranties of collection, payment or performance; (b) indemnity bonds, obligations to indemnify or obligations to hold harmless; (c) performance bonds; (d) contingent liabilities arising out of contractual obligations or out of undertakings (including any assignment or other transfer) with respect to leases, operating agreements or other similar obligations made or given by a Debtor relating to the obligations or performance of another Debtor; (e) vicarious liability; or (f) any other joint or several liability that any Debtor may have in respect of any obligation of another Debtor that is the basis of a Claim.

67. *"Tort Claim"* means any Claim that has not been settled, compromised or otherwise resolved that: (a) arises out of allegations of personal injury, wrongful death, property damage, products liability or similar legal theories of recovery; or (b) arises under any federal, state or local statute, rule, regulation or ordinance governing, regulating or relating to protection of human health, safety or the environment.

5

68.    *"Unexpired Lease"* means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

69.    *"U.S. Trustee"* means the United States Trustee for the District of Puerto Rico.

70.    *"U.S. Trustee Fees"* means the fees due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6).

71.    *"Voting and Claims Agent"* means the Person to be designated by the Debtors, as the employee or fiduciary responsible for noticing all Allowed Claims for voting purposes with regard to the Plan.

72.    *"Voting Classes"* means, collectively, Classes 1, 2, 3, 4, 5, 6A, 6B, 6C, 6D, 6E, 7, and 8.

73.    *"Voting Deadline"* means 30 days from the entry of the Disclosure Statement Order, which is the date by which all Ballots must be received by the Voting and Claims Agent in accordance with the Disclosure Statement Order.

74.    *"WBPR"* means WesternBank, Puerto Rico.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

*A.    Administrative Claims*

1.    Payment of Administrative Claims

Except to the extent that any entity entitled to a payment of any Allowed Administrative Claim otherwise agrees, each holder of an Allowed Administrative Claim shall be paid the full unpaid amount of such Claim in Cash (a) on the Distribution Date; (b) if such Claim is Allowed after the Distribution Date, on or as soon as reasonably practicable after the date such Claim is Allowed; or (c) upon such other terms as may be agreed upon by such holder and the Debtors, the Plan Administrator or otherwise determined by order of the Bankruptcy Court.

2.    Bar Date for Administrative Claims

Except as otherwise provided in this Article II.A, unless previously filed pursuant to the Initial Administrative Claims Bar Date, requests for payment of Administrative Claims must be filed and served on the Plan Administrator pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than 60 days after the Effective Date (the "Final Administrative Claims Bar Date"). Holders of Administrative Claims that are required to, but do not, file and serve a request for payment of such Administrative Claims by the applicable Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be filed and served on the Plan Administrator and the requesting party no later than 90 days after the Effective Date.

3.    Professional Compensation

Retained Professionals or other Entities asserting a claim for Accrued Professional Compensation must file and serve on the Plan Administrator, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such claim no later than 45 days after the Effective Date; *provided* that the Plan Administrator shall pay Retained Professionals or other Entities in the ordinary course of business for any work performed after the Effective Date; and *provided, further*, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professionals Order, unless otherwise ordered by the Bankruptcy Court. Objections to any claim for Accrued Professional Compensation must be filed and served on the Plan Administrator and the requesting party no later than

75 days after the Effective Date. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment claims for Accrued Professional Compensation. Each holder of a Claim for Allowed Professional Compensation shall be paid by the Plan Administrator in Cash from the Proceeds Account.

*B.    Priority Tax Claims*

Each holder of an Allowed Priority Tax Claim shall receive, on the Distribution Date or such later date as such Allowed Priority Tax Claim becomes due and payable, at the option of the Plan Administrator, one of the following treatments on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an aggregate amount of such Allowed Priority Claim payable in installment payments over a period of not more than five years after the applicable Commencement Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; or (3) such other treatment as may be agreed to by such holder and the Debtors or the Plan Administrator or otherwise determined upon an order of the Bankruptcy Court.

*C.    Statutory Fees*

On the Distribution Date, the Plan Administrator shall pay, in full in Cash, any U.S. Trustee Fees due at the time of Confirmation.  On and after the Confirmation Date, the Plan Administrator shall pay the applicable U.S. Trustee Fees until the entry of a final decree in the Debtors' Chapter 11 Case or until such Chapter 11 Case is converted or dismissed; *provided, however*, that in the event sufficient funds are not available in the Debtors Estate at the conclusion of its Chapter 11 Case to pay U.S. Trustee Fees that are due and owing, any such fees shall be funded from the Cash held in the Proceeds Account.

*D.    Cure Claims*

Requests for payment of Cure Claims must be filed and served, and will be treated, in accordance with the provisions of Article VI.C.1 hereof.

## ARTICLE III.
## CLASSIFICATION OF CLAIMS AND INTERESTS IN THE DEBTORS

*A.    Classification of Claims and Interests.*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against the Debtors. A Claim is placed in a particular Class for the purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim and such Claim has not been paid, released, withdrawn, or otherwise settled before the Effective Date.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims and statutory fees payable pursuant to section 1930 of title 28 of the United States Code have not been classified

*B.    Classes*

1.    Class – 1 – Secured Claim of Popular Auto

(a)    *Allowance:* Popular Auto's Claim is Allowed in the amount of $107,515.73.

(b)    *Treatment*: Holders of Allowed Claims in Class 1 shall retain their lien(s) in the corresponding collateral and receive, in full and final satisfaction of their Claims: (i) a 2% per annum interest only payment on the Allowed Claims in Class 1, until full satisfaction of the claim pursuant to the provisions of Article V.D hereof, or the election by the Holder of any Allowed Claim under the provisions of Article V.E; (ii) a Pro Rata share of Net Proceeds available for distribution by the Plan Administrator upon liquidation of assets of the Debtors, or assets controlled by the Debtors, if any, which Net Proceeds (a) will be held in the Proceeds Account and (b) will be released from escrow and distributed in accordance with Article V.D hereof; and (iii) any discretionary payments from the general operational accounts of the Debtors pursuant to Article

7

*In re Beltran, et al.*, 09-06437-BKC-ESL          The Law Offices of Lorenzo Palomares P.S.C.

Attorneys & Counselors at Law

V.D.

(c) *Voting*: Class 1 is impaired, and holders of Claims in Class 1 are entitled to vote to accept or reject the Plan.

2. <u>Class – 2 – Secured Claim of Ocasio</u>

(a) *Allowance:* Ocasio's claim is Allowed in the amount of $250,000.

(b) *Treatment*: Holders of Allowed Claims in Class 2 shall retain their lien(s) in the corresponding collateral and receive, in full and final satisfaction of their Claims: (i) a 2% per annum interest only payment on the Allowed Claims in Class 2, until full satisfaction of the claim pursuant to the provisions of Article V.D hereof, or the election by the Holder of any Allowed Claim under the provisions of Article V.E; (ii) a Pro Rata share of Net Proceeds available for distribution by the Plan Administrator upon liquidation of assets of the Debtors, or assets controlled by the Debtors, if any, which Net Proceeds (a) will be held in the Proceeds Account and (b) will be released from escrow and distributed in accordance with Article V.D hereof; and (iii) any discretionary payments from the general operational accounts of the Debtors pursuant to Article V.D.

(c) *Voting*: Class 2 is impaired, and holders of Claims in Class 2 are entitled to vote to accept or reject the Plan.

3. <u>Class – 3 – Secured Claim of FBPR</u>

(a) *Allowance:* FBPR's Claim is Allowed in the amount of $73,582.98.

(b) *Treatment*: Holders of Allowed Claims in Class 3 shall retain their lien(s) in the corresponding collateral and receive, in full and final satisfaction of their Claims: (i) a 2% per annum interest only payment on the Allowed Claims in Class 3, until full satisfaction of the claim pursuant to the provisions of Article V.D hereof, or the election by the Holder of any Allowed Claim under the provisions of Article V.E; (ii) a Pro Rata share of Net Proceeds available for distribution by the Plan Administrator upon liquidation of assets of the Debtors, or assets controlled by the Debtors, if any, which Net Proceeds (a) will be held in the Proceeds Account and (b) will be released from escrow and distributed in accordance with Article V.D hereof; and (iii) any discretionary payments from the general operational accounts of the Debtors pursuant to Article V.D.

(c) *Voting*: Class 3 is impaired, and holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

4. <u>Class – 4 – Secured Claim of CRIM</u>

(a) *Allowance:* CRIM's Claim is Allowed in the amount of $14,792.27.

(b) *Treatment*: Holders of Allowed Claims in Class 4 shall retain their lien(s) in the corresponding collateral and receive, in full and final satisfaction of their Claims: (i) a 2% per annum interest only payment on the Allowed Claims in Class 4, until full satisfaction of the claim pursuant to the provisions of Article V.D hereof, or the election by the Holder of any Allowed Claim under the provisions of Article V.E; (ii) a Pro Rata share of Net Proceeds available for distribution by the Plan Administrator upon liquidation of assets of the Debtors, or assets controlled by the Debtors, if any, which Net Proceeds (a) will be held in the Proceeds Account and (b) will be released from escrow and distributed in accordance with Article V.D hereof; and (iii) any discretionary payments from the general operational accounts of the Debtors pursuant to Article V.D.

(c)     *Voting*: Class 4 is impaired, and holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

5.      <u>Class – 5 – Secured Claim of IRS</u>

(a)     *Allowance:* IRS's Claim is Allowed in the amount of $163,367.61.

(b)     *Treatment*: Holders of Allowed Claims in Class 5 shall retain their lien(s) in the corresponding collateral and receive, in full and final satisfaction of their Claims: (i) a 2% per annum interest only payment on the Allowed Claims in Class 5, until full satisfaction of the claim pursuant to the provisions of Article V.D hereof, or the election by the Holder of any Allowed Claim under the provisions of Article V.E; (ii) a Pro Rata share of Net Proceeds available for distribution by the Plan Administrator upon liquidation of assets of the Debtors, or assets controlled by the Debtors, if any, which Net Proceeds (a) will be held in the Proceeds Account and (b) will be released from escrow and distributed in accordance with Article V.D hereof; and (iii) any discretionary payments from the general operational accounts of the Debtors pursuant to Article V.D.

(c)     *Voting*: Class 5 is impaired, and holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

6.      <u>Class – 6 – Secured Claims of WBPR</u>

(i)     <u>Class 6A —Secured Claim of WBPR</u>

(a)     *Allowance:* WBPR's Claim is Allowed in the amount of $252,153.25.

(b)     *Treatment*: Holders of Allowed Claims in Class 6A shall retain their lien(s) in the corresponding collateral and receive, in full and final satisfaction of their Claims: (i) a 2% per annum interest only payment on the Allowed Claims in Class 6A, until full satisfaction of the claim pursuant to the provisions of Article V.D hereof, or the election by the Holder of any Allowed Claim under the provisions of Article V.E; (ii) a Pro Rata share of Net Proceeds available for distribution by the Plan Administrator upon liquidation of assets of the Debtors, or assets controlled by the Debtors, if any, which Net Proceeds (a) will be held in the Proceeds Account and (b) will be released from escrow and distributed in accordance with Article V.D hereof; and (iii) any discretionary payments from the general operational accounts of the Debtors pursuant to Article V.D.

(c)     *Voting*: Class 6A is impaired, and holders of Claims in Class 6A are entitled to vote to accept or reject the Plan.

(ii)    <u>Class 6B —Secured Claim of WBPR</u>

(a)     *Allowance:* WBPR's Claim is Allowed in the amount of $756,565.92.

(b)     *Treatment*: Holders of Allowed Claims in Class 6B shall retain their lien(s) in the corresponding collateral and receive, in full and final satisfaction of their Claims: (i) a 2% per annum interest only payment on the Allowed Claims in Class 6B, until full satisfaction of the claim pursuant to the provisions of Article V.D hereof, or the election by the Holder of any Allowed Claim under the provisions of Article V.E; (ii) a Pro Rata share of Net Proceeds available for distribution by the Plan Administrator upon liquidation of assets of the Debtors, or assets controlled by the Debtors, if any, which Net Proceeds (a) will be held in the Proceeds Account and (b) will be released from escrow and distributed in accordance with Article V.D hereof; and (iii) any discretionary payments from the general operational accounts of the Debtors pursuant to Article V.D.

(c)     *Voting*: Class 6B is impaired, and holders of Claims in Class 6B are entitled to vote to accept or reject the Plan.

(iii)     <u>Class 6C —Secured Claim of WBPR</u>

(a)     *Allowance:* WBPR's Claim is Allowed in the amount of $8639.86.

(b)     *Treatment*: Holders of Allowed Claims in Class 6C shall retain their lien(s) in the corresponding collateral and receive, in full and final satisfaction of their Claims: (i) a 2% per annum interest only payment on the Allowed Claims in Class 6C, until full satisfaction of the claim pursuant to the provisions of Article V.D hereof, or the election by the Holder of any Allowed Claim under the provisions of Article V.E; (ii) a Pro Rata share of Net Proceeds available for distribution by the Plan Administrator upon liquidation of assets of the Debtors, or assets controlled by the Debtors, if any, which Net Proceeds (a) will be held in the Proceeds Account and (b) will be released from escrow and distributed in accordance with Article V.D hereof; and (iii) any discretionary payments from the general operational accounts of the Debtors pursuant to Article V.D.

(c)     *Voting*: Class 6C is impaired, and holders of Claims in Class 6C are entitled to vote to accept or reject the Plan.

(iv)     <u>Class 6D —Secured Claim of WBPR</u>

(a)     *Allowance:* WBPR's Claim is Allowed in the amount of $84,024.48.

(b)     *Treatment*: Holders of Allowed Claims in Class 6D shall retain their lien(s) in the corresponding collateral and receive, in full and final satisfaction of their Claims: (i) a 2% per annum interest only payment on the Allowed Claims in Class 6D, until full satisfaction of the claim pursuant to the provisions of Article V.D hereof, or the election by the Holder of any Allowed Claim under the provisions of Article V.E; (ii) a Pro Rata share of Net Proceeds available for distribution by the Plan Administrator upon liquidation of assets of the Debtors, or assets controlled by the Debtors, if any, which Net Proceeds (a) will be held in the Proceeds Account and (b) will be released from escrow and distributed in accordance with Article V.D hereof; and (iii) any discretionary payments from the general operational accounts of the Debtors pursuant to Article V.D.

(c)     *Voting*: Class 6D is impaired, and holders of Claims in Class 6D are entitled to vote to accept or reject the Plan.

(v)     <u>Class 6E —Secured Claim of WBPR</u>

(a)     *Allowance:* WBPR's Claim is Allowed in the amount of $831,732.46.

(b)     *Treatment*: Holders of Allowed Claims in Class 6E shall retain their lien(s) in the corresponding collateral and receive, in full and final satisfaction of their Claims: (i) a 2% per annum interest only payment on the Allowed Claims in Class 6E, until full satisfaction of the claim pursuant to the provisions of Article V.D hereof, or the election by the Holder of any Allowed Claim under the provisions of Article V.E; (ii) a Pro Rata share of Net Proceeds available for distribution by the Plan Administrator upon liquidation of assets of the Debtors, or assets controlled by the Debtors, if any, which Net Proceeds (a) will be held in the Proceeds Account and (b) will be released from escrow and distributed in accordance with Article V.D hereof; and (iii) any discretionary payments from the general operational accounts of the Debtors pursuant to Article V.D.

(c)     *Voting*: Class 6E is impaired, and holders of Claims in Class 6E are entitled to vote to accept or reject the Plan.

7. <u>Class – 7 – Secured Claim of BPPR</u>

    (a)    *Allowance:* BPPR's Claim is Allowed in the amount of $5,274,197.05.

    (b)    *Treatment*: Holders of Allowed Claims in Class 7 shall retain their lien(s) in the corresponding collateral and receive, in full and final satisfaction of their Claims: (i) a 2% per annum interest only payment on the Allowed Claims in Class 7, until full satisfaction of the claim pursuant to the provisions of Article V.D hereof, or the election by the Holder of any Allowed Claim under the provisions of Article V.E; (ii) a Pro Rata share of Net Proceeds available for distribution by the Plan Administrator upon liquidation of assets of the Debtors, or assets controlled by the Debtors, if any, which Net Proceeds (a) will be held in the Proceeds Account and (b) will be released from escrow and distributed in accordance with Article V.D hereof; and (iii) any discretionary payments from the general operational accounts of the Debtors pursuant to Article V.D.

    (c)    *Voting*: Class 7 is impaired, and holders of Claims in Class 7 are entitled to vote to accept or reject the Plan.

8. <u>Class – 8 – General Unsecured Claims</u>

    (a)    *Allowance:* General Unsecured Claims are Allowed in the amount claimed in their corresponding Proof of Claim.

    (b)    *Treatment*: Holders of Allowed Claims in Class 8 shall receive, in full and final satisfaction of their Claims: (i) a 2% per annum interest only payment on the Allowed Claims in Class 8, until full satisfaction of the claim pursuant to the provisions of Article V.D hereof, or the election by the Holder of any Allowed Claim under the provisions of Article V.E; (ii) a Pro Rata share of Net Proceeds available for distribution by the Plan Administrator upon liquidation of assets of the Debtors, or assets controlled by the Debtors, if any, which Net Proceeds (a) will be held in the Proceeds Account and (b) will be released from escrow and distributed in accordance with Article V.D hereof; and (iii) any discretionary payments from the general operational accounts of the Debtors pursuant to Article V.D.

    (c)    *Voting*: Class 8 is impaired, and holders of Claims in Class 8 are entitled to vote to accept or reject the Plan.

9. <u>Class – 9 – General Unsecured Claims</u>

    (a)    *Classification:* Class 9 shall consist of the Other Priority Claims.

    (b)    *Treatment*: The legal, equitable and contractual rights of the holders of Allowed Claims in Class 9 for each of the Debtors are unaltered. Each holder of an Allowed Claim in Class 9 for each of the Debtors shall receive on or as soon as reasonably practicable after the Initial Distribution Date, in full and final satisfaction of their Claims, one of the following treatments on account of the Claim, determined at the option of the Plan Administrator: (i) payment of the Allowed Claim in full in Cash on the later of the Distribution Date or as soon as practicable after such claim becomes Allowed or (ii) such other treatment as may be agreed to by the Plan Administrator and the holder of the Claim.

    (c)    *Voting*: Class 9 is an unimpaired class, and the holders of Claims in Class 9 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and the holders of Claims in Class 9 are not entitled to vote to accept or reject the Plan.

# ARTICLE IV.
## ACCEPTANCE OR REJECTION OF EACH PLAN

*A.     Voting Classes*

Each holder of an Allowed Claim as of the Voting Deadline in each of the Voting Classes shall be entitled to vote to accept or reject the applicable Plan.

*B.     Acceptance Requirements*

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an impaired class of Claims has accepted the applicable Plan if the holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the applicable Plan.

*C.     Nonconsensual Confirmation*

The Debtors request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any impaired class that does not accept its applicable Plan pursuant to section 1126 of the Bankruptcy Code. The Debtors reserve the right to modify the Plan or revoke the Plan in accordance with Article XI.A and Article XI.B hereof to the extent confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification or the Debtors determine that revocation of such plan is appropriate.

# ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

*A.     Overview of Means for Implementation.*

1.     Overview of the Transaction

The Plan provides for the orderly monetization of certain assets of and/or assets controlled by the Debtors over the course of approximately [60] months following the Effective Date (the "Implementation Term"), with the goal of satisfying all Allowed Claims as provided for herein. The proceeds from the sale of any of the Debtors' assets, or assets controlled by the Debtors, shall be placed into escrow for distribution in accordance with the terms and provisions of the Plan. The Plan Administrator shall be appointed to administer the Plan and to facilitate the monetization of the Debtors' assets subject to the oversight of the Bankruptcy Court, as applicable, and as set forth herein.

2.     Restructuring

Prior to, on or after the Effective Date, the Debtors, as applicable, shall be authorized to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate, the Plan (the "Restructuring Transactions").

*B.     Post-Effective Date Means for Implementation of the Plan*

1.     Existence of Debtors' Businesses

The several businesses of the Debtors shall continue to exist after the Effective Date.  On the Effective Date, the authority, power and incumbency of the Debtors' over their businesses shall remain in full force and effect. After the Effective Date, the Debtors may decide, in their sole discretion, how to operate and maintain the ongoing business operations of their several businesses.

2.     Duties and Powers of the Plan Administrator

(a)     *Authority*: The Confirmation Order shall name the Plan Administrator (as designated by the

12

Debtors) to work together with the Debtors and any representatives and professionals retained to implement the terms of the Plan. The duties and powers of the Plan Administrator shall include all powers necessary to implement the Plan with respect to the Debtors and administer and monetize certain assets of the Debtors or assets controlled by the Debtors, including, without limitation, the duties and powers listed herein.

(b)     *Claims and Causes of Action*: The Plan Administrator, in consultation with the Debtors, may object to, seek to subordinate, compromise or settle any and all Claims against the Debtors and Causes of Action of the Debtors that have not already been Allowed as of the Effective Date.

(c)     *Retention of Professionals*: The Plan Administrator may retain, in consultation with the Debtors, professionals to assist in performing its duties hereunder.

(d)     *Agreements*: The Plan Administrator, in consultation with the Debtors, may enter into any agreement or execute any document required by or consistent with the Plan and perform all of the Debtors' obligations thereunder.

(e)     *Reasonable Fees and Expenses*: The Plan Administrator, in consultation with the Debtors, may incur any reasonable and necessary expenses in connection with the performance of its duties under the Plan, including in connection with retaining professionals and/or entering into agreements pursuant to subsections (c) and (d), above. Any proceeds generated from the sale of the Debtors' assets, or assets controlled by the Debtors, available for distribution from the Proceeds Account to holders of Allowed Claims against the Debtors shall first be distributed to the Plan Administrator in satisfaction of any expenses incurred in connection with this provision.

(f)     *Other Actions*: The Plan Administrator may take all other actions not inconsistent with the provisions of the Plan, which the Plan Administrator deems reasonably necessary or desirable with respect to administering the Plan.

3.     Closing of the Debtors' Chapter 11 Case

When all Disputed Claims filed against a Debtor have become Allowed Claims or have been disallowed by Final Order, and all appropriate distributions have been made pursuant to the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close Debtors Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

4.     Method of Distribution Under the Plan

Distributions to holders of Allowed Claims against the Debtors shall be made by the Plan Administrator in accordance with the terms of the Plan on the first Distribution Date after which funds have become available. Distribution of the

5.     Monetization of Assets

The Plan Administrator, in consultation with the Debtors, shall in an expeditious but orderly manner, monetize and convert certain Debtors' assets, and assets controlled by the Debtors, to Cash and make timely distributions to the Proceeds Account and not unduly prolong the duration of the Plan. In so doing, the Plan Administrator shall exercise its reasonable business judgment in monetizing these assets of the Debtors and assets controlled by the Debtors to maximize recoveries. The monetization of the Debtors' assets, and assets controlled by the Debtors, may be accomplished through the sale of such assets (in whole or in combination) all as the Plan Administrator may determine is in the best interests of the holders of Claims against the Debtors; *provided*, *however* that such actions shall be subject to the Oversight Procedures as described further herein. The Plan Administrator shall have no liability to any of the Debtors, their Estates, their creditors, or any other party for the outcome of its decisions in this regard.

In connection with the monetization of the Debtors assets and assets controlled by the Debtors, the Plan Administrator shall maintain a ledger, which shall include a record of the purchase price for each sale of such assets and any costs or expenses associated with that sale. The Net Proceeds of such sales will be placed in the Proceeds

Account.

6.    Books and Records

The Debtors shall maintain the Debtors' books and records. The Plan Administrator shall maintain a separate record of the Net Proceeds and any costs associated with the sale of that Debtors' assets or assets controlled by the Debtors.

7.    Reporting Duties

The Debtors shall be responsible for filing informational returns on behalf of the Debtors and paying any tax liability of the Debtors. Additionally, the Debtors shall file (or cause to be filed) any other statements, returns or disclosures relating to the Debtors' businesses that are required by any governmental unit or applicable law.

8.    Tax Obligations

The Debtors shall retain the powers of administration regarding all of their tax obligations, including filing of returns.

9.    Oversight of the Plan Administrator

The Plan Administrator shall be subject to the oversight of the Bankruptcy Court, pursuant to Article X herein, or the Debtors as applicable. Each Debtor, in their sole capacity, may petition the Bankruptcy Court to seek relief if they believe that the Plan Administrator is abusing his or her enumerated powers or is monetizing assets to the prejudice of the Debtors and or their creditors.

10.    Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, the Plan Administrator shall make initial distributions under the Plan on account of Claims Allowed before the Effective Date on or as soon as practicable after the Distribution Date.

11.    Distributions on Account of Claims Allowed After the Effective Date

(a)    *Payments and Distributions on Disputed Claims*.

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, distributions under the Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made on the Periodic Distribution Date that is at least 30 days after the Disputed Claim becomes an Allowed Claim, unless otherwise agreed by the Plan Administrator and the holder of such Disputed Claim.

12.    Delivery of Distributions; Undeliverable or Unclaimed Distributions

(a)    *Delivery of Distributions in General*: Except as otherwise provided herein, the Plan Administrator shall make distributions to holders of Allowed Claims; *provided, however*, that the manner of such distributions shall be determined at the discretion of the Plan Administrator; and *provided further*, that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that holder.

(b)    *Timing and Calculation of Amounts to Be Distributed*: Except as otherwise expressly provided herein, holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

(c)    *Distributions by Distribution Agents*: The Debtors and the Plan Administrator shall have the authority, in their sole discretion, to nominate the Distribution Agent to facilitate the distributions required hereunder. As a condition to serving as a Distribution Agent, a Distribution Agent must (a) affirm its obligation to

14

facilitate the prompt distribution of any documents, (b) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required hereunder and (c) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required hereunder that are to be distributed by such Distribution Agent. The Debtors and Plan Administrator may pay to the Distribution Agents all reasonable and documented fees and expenses of the Distribution Agents without the need for any approvals, authorizations, actions or consents.

(d) *Setoffs and Withholdings*: The Plan Administrator or Distribution Agent may withhold (but not, except as set forth below, set off) from the distribution called for on account of any Allowed Claim an amount equal in value to any claims, rights and Causes of Action of any nature that the Debtors may hold against the holder of that Claim. To the extent that the value of the Debtor's claim, rights or Cause of Action against a particular claimant is undisputed, resolved by settlement or has been adjudicated by Final Order of any court, the Plan Administrator may set off that value against distributions that would otherwise become due to such claimant. Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any claims, rights or Causes of Action that the Debtors may possess against any claimant.

(e) *Minimum Distributions*: Notwithstanding anything herein to the contrary, the Plan Administrator or Distribution Agents shall be required to make distributions or payments of less than $1,000 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars.

(f) *Undeliverable Distributions*: (i) If any distribution to a holder of an Allowed Claim made in accordance herewith is returned to the Plan Administrator (or its Distribution Agent) as undeliverable, no further distributions shall be made to such holder unless and until the Debtors (or their Distribution Agent) are notified in writing of such holder's then current address, at which time all currently due missed distributions shall be made to such holder on the next Periodic Distribution Date. Undeliverable distributions shall not be entitled to any interest, dividends or other accruals of any kind. No later than 90 days after the Effective Date, the Plan Administrator shall file with the Bankruptcy Court a list of the holders of undeliverable distributions, together with the date on which such distribution was attempted (the "Undeliverable Distribution Register"). Each such list shall be maintained and updated (to the extent of any changes) quarterly by the Plan Administrator for as long as the applicable Chapter 11 Case stays open. Nothing contained herein shall require the Plan Administrator to attempt to locate any holder of an Allowed Claim; (ii) Each holder of an Allowed Claim that is listed in the Undeliverable Distribution Register shall be responsible for providing the Plan Administrator or Distribution Agent with a current, verifiable address for mailing of distributions on or before the latest of (x) one year after the Effective Date, (y) 60 days after the attempted delivery of the undeliverable distribution and (z) 180 days after the date the holder's Claim becomes an Allowed Claim. If a holder of an Allowed Claim listed in the Undeliverable Distribution Register does not provide a current, verifiable address within the time period set forth above, that holder shall be discharged and shall be forever barred, estopped and enjoined from asserting its Claim against the Debtors or their property. In such cases, the Undeliverable Distribution will be deemed unclaimed property under section 347(b) of the Bankruptcy Code and will be redistributed to other creditors in accordance with the applicable Debtor's Plan; and (iii) Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 120 days after the issuance of such check. In an effort to ensure that all holders of Allowed Claims receive their allocated distributions, no later than 120 days after the issuance of such checks, the Debtors shall file with the Bankruptcy Court a list of the holders of any un-negotiated checks. Each such list shall be maintained and updated (to the extent of any changes) quarterly by the Plan Administrator for as long as the applicable Chapter 11 Case stays open. Requests for reissuance of any check shall be made directly to the Distribution Agent by the holder of the relevant Allowed Claim with respect to which such check originally was issued. If any holder of an Allowed Claim holding an un-negotiated check does not request reissuance of that check within 180 days after the date of the check was mailed or otherwise delivered to the holder, that Allowed Claim shall be discharged and the holder thereof shall be forever barred, estopped and enjoined from asserting any Claim against any of the Debtors or their property. In such cases, any Cash held for payment on account of such Claims shall be property of the Debtors, free of any Claims of such holder with respect thereto. Nothing contained herein shall require the Debtors to attempt to locate any holder of an Allowed Claim.

13. <u>Compliance with Tax Requirements/Allocations</u>

In connection with the Plan, to the extent applicable, the Plan Administrator shall comply with all tax

15

The Law Offices of Lorenzo Palomares P.S.C.
Attorneys & Counselors at Law

withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Plan Administrator and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.

14.    Disallowance of Claims

All Claims of any Entity from which property is sought by the Debtors, or through the Plan Administrator, under section 542, 543, 550 or 553 of the Bankruptcy Code or that the Debtors allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code shall be disallowed if, (a) the Entity, on the one hand, and the Debtors or the Plan Administrator, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code, and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER ON OR BEFORE THE LATER OF (a) THE CONFIRMATION HEARING AND (b) 45 DAYS AFTER THE APPLICABLE BAR DATE.**

15.    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes

The Debtors or the Plan Administrator may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.  Pursuant to section 1146(a) of the Bankruptcy Code, any post-Confirmation Date transfer from the Debtors to any person pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, or other interest in the Debtors businesses; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable law, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

C.    *The Proceeds Account*

The Debtors are required to deposit in the Proceeds Account sufficient funds necessary to cover all costs for a specific Distribution Date.  Failure to fund such payments could result in an Events of Default.

D.    *Conditions for Release from Escrow of Net Proceeds; Non-Ordinary Course Payments*

All of the Net Proceeds derived from the monetization of the Debtors' assets shall be held in the Proceeds Account. The Proceeds Account shall be monitored, maintained and administered by the Plan Administrator.  At the discretion of the Plan Administrator, all, or a portion, of the Net Proceeds shall be distributed Pro Rata to holders of

16

Allowed Claims on a corresponding Distribution Date, or any other date the Plan Administrator, in consultation with the Debtor, deems in the interest of the Debtors and the Holders of Allowed Claims. If at any point the total Net Proceeds held in the Proceeds Account exceed the total amount of the Allowed Claims, or remaining unpaid portion of such Allowed Claims, the Plan Administrator must make a full distribution no later than the next Distribution Date, unless, the Plan Administrator believes it would severely detrimental to either the Debtors or the Holders of Allowed Claims, or both. In addition, the Debtors, in their sole business judgment, may direct the Plan Administrator, using proceeds from the Debtor's business operations out of their general operating accounts, not otherwise intended to fund this Plan, to make any discretionary payment at anytime on any Allowed Claim in full, or partial, satisfaction of such claim.

E. *Events of Default; Failure to Timely Satisfy the Requirements of the Plan*

    1. <u>Events of Default</u>

The occurrence of any of the following shall constitute an Event of Default under the Plan:

    (a) *Failure to Make Payments*: Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan; and

    (b) *Submission of Fraudulent Reports*: The submission to the holder of Plan Debt or Plan Subordinated Debt of a report or a certificate required to be submitted under the Plan in which the Debtors knowingly or fraudulently misrepresents or fails to state any material fact.

    2. <u>In the Events of Default or Failure to Timely Satisfy the Requirements of the Plan</u>

A Holder of an Allowed Claim, which has not been paid in full at the time the right to elect this provision hereto vests, may move the Bankruptcy Court for the appointment of a Chapter 11 Trustee, or for the conversion to Chapter 7, or for dismissal, of this bankruptcy case if, 1) there is an Events of Default, or 2) if all Allowed Claims are not fully paid within [60] months from the Effective Date.


**ARTICLE VI.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A. *Assumption and Rejection of Executory Contracts and Unexpired Leases*

    1. <u>Rejection of Executory Contracts and Unexpired Leases</u>

Each Executory Contract or Unexpired Lease shall be deemed automatically rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease:

    (a)    has been previously assumed by the Debtors by Final Order of the Bankruptcy Court;
    (b)    has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date;
    (c)    is the subject of a motion to assume or reject pending as of the Effective Date;
    (d)    is listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" in the Plan Supplement; or
    (e)    is otherwise assumed pursuant to the terms herein.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Non-Debtor parties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases, including under section 503 of the Bankruptcy Code; *provided* that such Claims must be filed in accordance with the procedures set forth in Article VI.B hereof. The Debtors reserve the right to amend the schedule of Assumed Executory Contracts and Unexpired

17

Leases and Rejected Executory Contracts and Unexpired Leases at any time before the Effective Date.

The Debtors are deemed to have abandoned any furniture, fixtures, equipment, inventory and other personal property located at the premises of Unexpired Leases of nonresidential real property (as such term is used in section 365 of the Bankruptcy Code) for which the rejection is first effective on or after the Effective Date, as of the later of (i) the Effective Date, (ii) the effective date of rejection and (iii) the date the Debtors have turned over possession of such premises to the respective landlord. The Debtors shall have no administrative expense liability to any of their landlords for rental charges or occupancy of the leased premises after such abandonment by virtue of the continued presence at such premises of such abandoned property. Landlords at premises with such abandoned property may, in their sole discretion and without further notice, dispose of such abandoned property without liability to the Debtors or any non-Debtor third party claiming any interest in such property and, to the extent applicable, the automatic stay shall be modified to allow such disposition. The Debtors shall endeavor to provide such third parties prior, specific, reasonable notice that they must retrieve the property in which they claim an interest before or upon such abandonment or such property shall be deemed so abandoned without further notice to or action, order or approval of the Bankruptcy Court and such landlords or their designee shall be free to dispose of same without liability or recourse to such landlords. Notwithstanding the Debtors' required efforts to provide prior, specific, reasonable notice to such third parties, the Plan and any notices of the Effective Date shall be deemed sufficient notice to such third parties to effectuate such abandonment and enable landlords to dispose of such abandoned property without liability or recourse.

The right of any party in interest to assert a Claim against the Debtors' Estates for costs associated with the removal or disposition of such abandoned property is fully preserved; *provided* that any such Claim must be filed by the applicable Claims Bar Date and otherwise in accordance herewith; *provided*, *further*, that the rights of all parties, including the Debtors, to contest any such Claim shall be fully preserved.

2.  Assumption of Executory Contracts and Unexpired Leases

On the Effective Date, the Debtors shall assume all of the Executory Contracts and Unexpired Leases listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" in the Plan Supplement.

3.  Approval of Assumptions

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions described in this Article VI pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption of such Executory Contract or Unexpired Lease, including objecting to the cure amount designated by the Debtors as payable in connection with such assumption, will be deemed to have consented to such assumption and agreed to the specified Cure Claim amount.

B.  *Claims on Account of the Rejection of Executory Contracts or Unexpired Leases*

All Proofs of Claim arising from the rejection of Executory Contracts or Unexpired Leases must be filed, with the Voting and Claims Agent on or before the later of:

    a.  the applicable Claims Bar Date; and
    b.  30 days after the effective date of the rejection of such Executory Contract or Unexpired Lease.

Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against any Debtor and property, and the Debtors and their Estates and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article VIII.G hereof.

**YOUR EXECUTORY CONTRACT OR UNEXPIRED LEASE IS AUTOMATICALLY REJECTED AS OF THE EFFECTIVE DATE, UNLESS YOUR EXECUTORY CONTRACT OR UNEXPIRED LEASE: (A) WAS PREVIOUSLY ASSUMED BY THE DEBTORS BY FINAL ORDER OF THE BANKRUPTCY COURT; (B) WAS ASSUMED BY THE DEBTORS BY ORDER OF THE BANKRUPTCY COURT AS OF THE EFFECTIVE DATE, WHICH ORDER BECOMES A FINAL ORDER AFTER THE EFFECTIVE DATE; (C) IS THE SUBJECT OF A MOTION TO ASSUME OR REJECT PENDING ON OR BEFORE THE EFFECTIVE DATE; (D) IS LISTED ON THE SCHEDULE OF "ASSUMED CONTRACTS AND UNEXPIRED LEASES" IN THE PLAN SUPPLEMENT; OR (E) IS OTHERWISE ASSUMED PURSUANT TO THE TERMS HEREIN.**

**THE BAR DATE FOR FILING CLAIMS BASED ON REJECTION OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES IS THE LATER OF: (A) THE APPLICABLE CLAIMS BAR DATE AND (B) 30 DAYS AFTER THE EFFECTIVE DATE OF THE REJECTION OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. A NOTICE OF THE EFFECTIVE DATE OF THE PLAN, INCLUDING NOTICE REGARDING THE REJECTION OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES, WILL BE SENT TO ALL KNOWN CREDITORS.**

*C.    Procedures for Counterparties to Executory Contracts and Unexpired Leases Assumed Pursuant to the Plan*

**A NOTICE OF THE EFFECTIVE DATE OF THE PLAN, INCLUDING NOTICE REGARDING THE ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES, WILL BE SENT TO ALL KNOWN CREDITORS.** For known non-Debtor parties to Executory Contracts and Unexpired Leases assumed or assumed and assigned pursuant to the Plan, such notice or separate notices will be sent on or as soon as practicable after the Effective Date notifying such Entities regarding the Executory Contracts and Unexpired Leases to which it is a counterparty that have been assumed or assumed and assigned pursuant to the Plan.

1.    <u>Executory Contracts and Unexpired Leases Assumed Pursuant to the Plan</u>

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (a) the amount of any payments to cure such a default, (b) the ability of a Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. At least 20 days prior to the Confirmation Hearing, the Debtors shall provide for notices of proposed assumption and proposed cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served and actually received by the Debtors at least 10 days prior to the Confirmation Hearing. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such matters.

**ARTICLE VII.
CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article VII.A hereof.

1.    The Confirmation Order shall have been entered and become a Final Order in a form and in substance reasonably satisfactory to the Debtors. The Confirmation Order shall provide that, among other things, (i) the Debtors, as appropriate, are authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with or described in the Plan.

19

2.    All documents and agreements necessary to implement the Plan, shall have (a) all conditions precedent to such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery and (c) been effected or executed.

3.    All actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

4.    The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors and shall approve the Debtors' consummation of the Plan and entry into and performance under related agreements, including the Plan Documents.

A.    *Waiver of Conditions*

The conditions to confirmation of the Plan and to the Effective Date set forth in this Article VII may be waived by the Debtors without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

B.    *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against the Debtors; (2) prejudice in any manner the rights of the Debtors; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors in any respect.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.    *Compromise and Settlement*

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder takes into account and conforms to the relative priority and rights of the Claims in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise. As of the Effective Date, any and all such rights described in the preceding sentence are settled, compromised and released pursuant hereto. The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (a) in the best interests of the Debtors, their estates and all holders of Claims, (b) fair, equitable and reasonable, (c) made in good faith and (d) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019. In addition, the allowance, classification and treatment of Allowed Claims take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors, on the one hand, and the Plan Releasees, on the other (to the extent set forth in Article VIII.B.1 hereof) and, as of the Effective Date, any and all such Causes of Action are settled, compromised and released to the extent set forth in this Plan. The Confirmation Order shall approve the releases by all Entities of all such contractual, legal and equitable subordination rights or Causes of Action that are satisfied, compromised and settled pursuant hereto. Nothing in this paragraph is specifically limited by Article VIII.F hereof.

B.    *Debtor Releases and other Agreements*

1.    <u>Agents, Advisors and Professionals</u>.

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors and their estates will be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any

20

act, omission, transaction, event or other occurrence taking place on or prior to Effective Date in any way relating to the Debtors, the chapter 11 cases, the Plan, or the Disclosure Statement, that could have been asserted at any time, past or present or future by or on behalf of the Debtors or their estates against the Debtors' agents, advisors and professionals employed as of the Petition Date or retained or employed during the Chapter 11 Cases, in each case in their capacity as such, except solely to the extent that any such agent, advisor or professional has executed a tolling agreement with the Debtors preserving the Debtors' rights to pursue certain causes of action (the "Identified Actions") (all parties identified, above, the "Plan Releases").

C.    Exculpation

The Exculpated Parties shall neither have, nor incur any liability to any entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; *provided*, *however*, that the foregoing exculpation shall have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; *provided further*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan; *provided still further*, that the foregoing exculpation shall not apply to any contingent Claims or to any Causes of Action that is expressly set forth in and preserved by the Plan, any Plan Supplement or related documents.

D.    Discharge of the Debtors

Except as otherwise provided herein, on the Effective Date and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all claims herein shall be in exchange for and in complete satisfaction, discharge and release of all claims of any nature whatsoever, including any interest accrued on such claims from and after the petition date, against the Debtors, or any of their assets, property or estates; (b) subject to applicable law, the Plan shall bind all holders of claims, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all claims against the Debtors shall be satisfied, discharged and released in full or cancelled as provided in the Plan, and the Debtors' liability with respect thereto shall be extinguished completely, including, without limitation, any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all entities shall be precluded from asserting against any of the Debtors, the Debtors' estates, and each of their assets and properties, including without limitation the Proceeds Account, any other claims based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date.

E.    Preservation of Rights and Causes of Action

1.    Preservation of All Causes of Action Not Expressly Settled or Released by the Debtors

Unless a claim or Cause of Action against a holder of a Claim or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or *laches* shall apply to such Claims or Causes of Action upon or after the confirmation or Effective Date of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Claims or Causes of Action have been expressly released in the Plan (including, without limitation, and for the avoidance of doubt, the Debtor Release contained in Article VIII.B hereof) or any other Final Order (including, without limitation, the Confirmation Order). In addition, the Debtors expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

F.    Preservation of Rights and Causes of Action Not Settled or Released by the Creditors

Unless a claim or Cause of Action held by a holder of a Claim against a non-Debtor party is waived,

21

relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), the holders of such Claims expressly reserve such claim or Cause of Action for later adjudication by such holder of a Claim. The foregoing reservation of claims or Causes of Action includes, without limitation, Claims and Causes of Action not specifically identified or of which the holder of such Claim may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the holder of such Claim at this time or facts or circumstances that may change or be different from those the holder of such Claim now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or *laches* shall apply to such Claims or Causes of Action upon or after the confirmation or Effective Date of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Claims or Causes of Action have been expressly released in the Plan or any other Final Order (including, without limitation, the Confirmation Order).

G.    *Injunction*

From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner, any cause of action released pursuant to the Plan or the Confirmation Order.

From and after the Effective Date, to the extent of the releases and exculpation granted in Article VIII hereof, the releasing parties shall be permanently enjoined from commencing or continuing in any manner against Plan Releases and the Exculpated Parties and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to Article VIII hereof.

Except as otherwise expressly provided for herein or in obligations issued pursuant hereto, from and after the Effective Date, all Entities shall be precluded from asserting against the debtors, the debtors in possession, the debtors' estates, and each of their attorneys, financial advisors, accountants, professionals, agents, affiliates and representatives (each of the foregoing in its individual capacity as such), and their assets and properties, any other claims based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date.

The rights afforded in the Plan and the treatment of all claims herein shall be in exchange for and in complete satisfaction of claims of any nature whatsoever, including, without limitation, any interest accrued on claims from and after the date of the petition, against the Debtors or any of their assets, property or estates. On the Effective Date, all such claims against the Debtors shall be fully released and discharged.

Except as otherwise expressly provided for herein or in obligations issued pursuant hereto from and after the Effective Date, all claims against in the Debtors shall be fully released and discharged and the Debtors' liability with respect thereto shall be extinguished completely, including, without limitation, any liability of the kind specified under section 502(g) of the bankruptcy code.

All entities shall be precluded from asserting against the Debtors, and the Debtors' Estates, and each of their assets and properties, any other claims or equity interests based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date.

## ARTICLE IX.
## BINDING NATURE OF PLAN

**THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS, NOTWITHSTANDING WHETHER ANY SUCH HOLDERS FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**

## ARTICLE X.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the

22

Bankruptcy Court shall, after the Effective Date, retain the maximum legally permissible jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan, including, without limitation, jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Claim, the resolution of any and all objections to the allowance or priority of any Claim and the resolution of any and all issues related to the release of Liens upon payment of a secured Claim;

2.    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Confirmation Date;

3.    resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to the Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed;

4.    ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, the Plan Supplement or the Disclosure Statement;

6.    resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

7.    issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

8.    enforce the injunction set forth in Article VIII.G hereof;

9.    resolve any cases, controversies, suits or disputes with respect to the Debtor Release, the Exculpation and other provisions contained in Article VIII hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

10.    enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

11.    resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

12.    enter an order concluding the Chapter 11 Case.

## ARTICLE XI.
## MISCELLANEOUS PROVISIONS

A.    *Modification of Plan*

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b)

of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### B.     Revocation of Plan

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file A subsequent chapter 11 plan.  If the Debtors revoke or withdraw the Plan, or if confirmation or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the applicable Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the applicable Plan and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the applicable Plan shall: (a) constitute a waiver or release of any Claims by or against such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

### C.     Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### D.     Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or any other Entity; or (2) any holder of a Claim or any other Entity before the Effective Date.

### E.     Further Assurances

The Debtors, as applicable, all holders of Claims receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### F.     Severability

If, before confirmation of this Plan, any term or provision hereof is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtors; *provided, further,* that the Debtors may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such order by the Bankruptcy Court, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### G.     Service of Documents

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors shall be sent by overnight mail to:

**LORENZO PALOMARES P.S.C. Attorneys & Counselors at Law**
Attn: Lorenzo J. Palomares-Starbuck, Esq.
421 Muñoz Rivera
Midtwon Bld, Penthouse 1001
Hato Rey, PR 00918

*H.     Filing of Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**Respectfully submitted this 29ᵗʰ day of January, 2010**


**CARLOS L. BELTRAN RODRIGUEZ**
d/b/a **LAS PIEDRAS SERVICE STATION**
d/b/a **JUNCOS SERVICE STATION**                    **INES GONZALEZ ROSADO**

_____                    _____
Carlos L. Bletran Rodriguez                         Ines Gonzalez Rosado


Prepared and submitted by:

**LORENZO PALOMARES P.S.C.**
**Attorneys & Counselors at Law**

*S/Lorenzo J. Palomares Starbuck*
Lorenzo J. Palomares-Starbuck, Esq.
USDC #218017
421 Muñoz Rivera
Midtwon Bld, Penthouse 1001
Hato Rey, PR 00918
(787)753-7441
Fax: (787) 622-2540

Counsel for Debtors in Possession

25

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF PUERTO RICO

In re:  Carlos Beltran, et al        )
)
)           **Case No.:** 09-bk-06437
)
)
)
)
)
)
)
)
_____/

## CERTIFICATE OF SERVICE

**I, Lorenzo J. Palomares Starbuck , declare under the penalty of perjury that I have sent the attached document (Disclosure statement and reorganization plan) to the following listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies**

Respectfully submitted,

*S/Lorenzo J. Palomares-Starbuck*
Lorenzo J. Palomares, Esq.
USDC #218017
Counsel for Petitioner
421 Muñoz Rivera
Midtwon Bld, Penthouse 1001
Hato Rey, PR 00918
TEL (787)753-7441
Fax (787) 622-2540

## LIST OF PARTIES SERVED

```
BANCO POPULAR PUERTO RICO
POPULAR CENTER
209 AVE MUNOZ RIVERA
SAN JUAN, PR  00918


Best Petroleum Inc.
P.O. Box 9525
Bayamon, PR  00960


BitaFull Inc.
PMB 1778
San Juan, PR  00917-3132


Carlos Beltran
Port Road # 39
Humacao, PR  00791


CARLOS BELTRAN gONZALEZ
SUNRISE AT PALMAS
95 MORNING DEW
HUMACAO, PR  00791


CARLOS BELTRAN GONZALEZ
SUNRISE AT PALMAS
95 MORNING DEW
HUMACAO, PR  00791


Carlos Beltran Rodriguez
```

```
Plamas Del Mar
Port Road #39
Humacao, PR  00791


Crim
P.O. Box 195387
San Juan, PR  00919-5387


DEPARTAMENTO DE HACIENDA PR
P.O. BOX 9024141
SAN JUAN, PR  00992-4141


DEPARTAMENTO DE HACIENDA PR
Sec. De Quiebras Ofic. 424-B
P.O. Box 9024140
SAN JUAN, PR  00902-4140


EFRAIN CASILLAS
P.O. BOX 775
JUNCOS, PR  00777


EURO BANK
AVE MUNOZ RIVERA # 270
SAN JUAN, PR  00918


FIRST BANK
AVE MUNOZ RIVERA # 876
HYDE PARK, RIO PIEDRAS, PR  00927


Interal Revenue Service
Ciiti View Plaza #2
48 Carr 165   Suite 2000
Guaynabo, PR  00969-8000


Interal Revenue Service
Centralized Insolvency Operations
O.O. Boox 1126
Cincinati, PA  45999-0039


J.C. Penney
P.O. Box 960090
Prlando, FL  32896-0090


Juncos Service Stattion
Carr. 185 Kl. 20.0
Juncos, PR  00777
```

```
KELVIN HERNANDEZ
SUNRISE AT PALMAS
90 SHADOW MIST
HUMACAO, PR  00971


Las Piedras Service Stattion
Carr. 183 Kil. 20.7
Las Piedras, PR  00771


Popular Auto
Banrupcy Deparment
P.O. Box 366818
San Juan, PR  00936-6818


Ramon Lebron Ocasio
HC40 Box 47250
San Lorenzo, PR  00754


Sears  Credit
P.O. Box 183081
Colombus, OH  43218-3081


State Insurance Fund
P.O. Box 365028
San Juan, PR  00936-5028


TORAL PETROLEUM CORP
KM 8 3 Rr 2
Bayamon, PR  00959


Treasury Departmernt Of Puerto Rico
Federal Litigation Div, Dept. Of Justice
P.O. Box 9020192
San Juan, PR  00902-0192


Visa
P.O. Box 70100
San Juan, PR  00936-8100


WESTERN BANK
269 AVE PONCE DE LEON
SAN JUAN, PR  00917


Zalez Credit Plan
Zalez Credit Plan
```

P.O. Box 689182
Des Moines, IA  50368-9182

**Counsel served:**

**CHARLES P GILMORE**
O'NEILL & GILMORE
SUITE 1701
252 PONCE DE LEON AVENUE
SAN JUAN, PR 00918
787-620-0670
787-620-0671 (fax)
cpg@go-law.com
*Assigned: 09/30/2009*

representing

**TORAL PETROLEUM
CORPORATION**
O'Neill & Gilmore, PSC
Citibank Towers Suite 1701
252 Ponce de Leon Ave.
San Juan, PR 00918
787-620-0670
787-620-0671 (fax)
*(Creditor)*

**JOSE R GONZALEZ IRIZARRY**
MC CONNELL VALDES
PO BOX 364225
SAN JUAN, PR 00936-4225
787-250-5636
787-759-2787 (fax)
jrgi@mcvpr.com
*Assigned: 09/25/2009*
*LEAD ATTORNEY*

representing

**BANCO POPULAR DE PUERTO
RICO**
PO BOX 362708
San Juan, PR 00936-2708
787 765-9800
*(Creditor)*

**JOSE L JIMENEZ QUINONES**
JIMENEZ QUINONES LAW OFFICE,
PSC
268 AVE. PONCE DE LEON
SUITE 1118
SAN JUAN, PR 00918-2007
787-282-9009
1-866-326-9416 (fax)
jljimenez11@gmail.com
*Assigned: 09/11/2009*

representing

**RAMON LEBRON OCASIO**
HC 40 BOX 47250
SAN LORENZO, PR 00754-9907
*(Creditor)*

**PATRICK D. O'NEILL**
O'NEILL & GILMORE, P.S.C.
Edif. Citibank Tower
252 Ave. Ponce de Leon Suite 1701
SAN JUAN, PR 00918-2019
(787) 620-0670
(787) 620-6071 (fax)
pdo@go-law.com
*Assigned: 09/30/2009*

representing

**TORAL PETROLEUM
CORPORATION**
O'Neill & Gilmore, PSC
Citibank Towers Suite 1701
252 Ponce de Leon Ave.
San Juan, PR 00918
787-620-0670
787-620-0671 (fax)
*(Creditor)*

**ALEJANDRO A SUAREZ CABRERA**
PO BOX 365028
SAN JUAN, PR 00936
787-793-5959 EXT. 5693
787 774-8465 (fax)
Alejandro.Suarez@cfse.gov.pr
*Assigned: 09/03/2009*

representing

**STATE INSURANCE FUND CORPORATION**
C/O ALEJANDRO A. SUAREZ CABRERA
PO BOX 365028
SAN JUAN, PR 00936-5028
787-793-5959 ext.5693
787-774-8465 (fax)
Alejandro.Suarez@cfse.gov.pr
*(Creditor)*

**ANGEL M. VAZQUEZ BAUZA**
P.O. BOX 191017
SAN JUAN, PR 00919-1017
787 754-1313
787 754-8760 (fax)
avazquez@enrassociates.com
*Assigned: 08/19/2009*

representing

**FIRSTBANK PUERTO RICO**
ENR & ASSOCIATES
PO BOX 191017
SAN JUAN, PR 00919-1017
*(Creditor)*

**YASMIN ROCIO VAZQUEZ VAZQUEZ**
CONSUMER BANKRUPTCY DEPARTMENT
PO BOX 366818
SAN JUAN, PR 00936
787-753-7849
787-751-7827 (fax)
quiebras@bppr.com
*Assigned: 08/31/2009*

representing

**POPULAR AUTO**
YASMIN R VAZQUEZ ESQ
PO BOX 366818
SAN JUAN, PR 00936-6818
*(Creditor)*

And /or

MONSITA LECAROZ ARRIBAS
ustpregion21.hr.ecf@usdoj.gov

PATRICK D. O'NEILL on behalf of Creditor TORAL PETROLEUM CORPORATION
pdo@go-law.com

LORENZO J. PALOMARES-STARBUCK on behalf of Debtor CARLOS BELTRAN RODRIGUEZ
palolaw2@gmail.com, palolaw@gmail.com

JESUS R RABELL MENDEZ on behalf of Creditor WESTERNBANK PUERTO RICO
jrabellcsp@prtc.net

STATE INSURANCE FUND CORPORATION
Alejandro.Suarez@cfse.gov.pr

ALEJANDRO A SUAREZ CABRERA on behalf of Creditor STATE INSURANCE FUND
CORPORATION
Alejandro.Suarez@cfse.gov.pr, aasuarezcabrera@yahoo.com

US TRUSTEE
ustpregion21.hr.ecf@usdoj.gov