IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                    :      CASE NO. 09-06437

CARLOS L. BELTRAN RODRIGUEZ;             :
INES GONZALEZ ROSADO; DBA                :
LAS PIEDRAS SERVICE STATION;             :
JUNCOS SERVICE STATION                   :      CHAPTER 11
                                          :
    Debtors                              :

FILED & ENTERED

APR -8 2010

U.S. BANKRUPTCY COURT
SAN JUAN, PUERTO RICO

## OPINION AND ORDER

Before the court is Toral Petroleum Corporation's (hereinafter referred to as the "Creditor") motion to convert this chapter 11 case to a chapter 7 pursuant to 11 U.S.C. 1112(b)(4)(J), that is, for "failure to file a disclosure statement or to file or confirm a plan, within the time fixed by this title or by order of the court;" and also for inability to effectuate a plan and unreasonable delay by the debtor that is prejudicial to creditors. On January 21, 2010 Carlos L. Beltran Rodriguez and Ines Gonzalez Rosado (hereinafter referred to as the "Debtors") filed their opposition to Creditor's motion to convert to chapter 7 and request for hearing. An evidentiary hearing was held on February 1, 2010. For the reasons set forth below the motion to convert this chapter 11 case to a chapter 7 is hereby denied.

## Facts and Procedural Background

Debtors filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on August 4, 2009. The 341 meeting of the creditors was initially scheduled for September 11, 2009 (Docket No. 7), and rescheduled to October 5, 2009 (Docket No. 17), and subsequently continued on November 3, 2009 (Docket No. 51), December 11, 2009 (Docket No. 68), and thereafter continued sine die (Docket No. 78). On March 12, 2010, the United States Trustee filed notice for the continuance of the 341 creditors' meeting for April 7, 2010 (Docket No. 104).

On September 22, 2009, a status conference was held in which the Debtors proffered and the court established that the disclosure statement and plan of reorganization would be filed by December 5, 2009 (Docket No. 22). The court was aware that the one-hundred twenty days (120) from the order

of relief fell on December 2, 2009 but allowed the Debtors to file the same on Saturday, December 5, 2009. On December 7, 2009, Debtors requested a sixty (60) day extension to file the plan of reorganization with an incorporated memorandum of law (Docket No. 72). The court on December 10, 2009 granted Debtors' request for a sixty (60) day time extension to file the plan of reorganization (Docket No. 74). On December 16, 2009, Banco Popular de Puerto Rico filed a "Motion Seeking Order Regarding Debtors' Extension of Time To File Payment Plan" requesting the court to take note of Debtors' noncompliance with the additional information requested by the United States Trustee at the 341 meeting of creditors and that no additional extensions of time to file the disclosure statement and plan of reorganization should be afforded to the Debtors since continuance of the 341 meeting of creditors does not constitute cause to postpone the filing of the disclosure statement and the plan of reorganization (Docket No. 77). On December 18, 2009, the court denied Banco Popular de Puerto Rico's motion and stated the following: "[t]he court notes that the exclusivity period has not been enlarged and that the extension of time does not preclude any party in interest to move for the dismissal of the case for cause.[1]" (Docket No. 79).

On January 8, 2010, Creditor filed a motion to convert the current chapter 11 case to a chapter 7 case pursuant to 11 U.S.C. 1112(b)(4)(J) and for inability to effectuate a plan; and unreasonable delay by the debtor that is prejudicial to creditors. Creditor's motion is based on the following allegations: (i) "Debtors' initial Schedules showed total assets of approximately $37,796,000.00 and total liabilities of approximately $14,427,365.00. See docket entry 26, debtors' September 24, 2009 Schedules. Two months later, by November 20, 2009, debtors' Schedules revealed total assets of $37,881,000 (an increase of approximately $85,000.00, and this without including the $80,000.00 yet to be added as the value of debtors' luxury boat and automobile collection) and total liabilities of $13,564,697.71 (a decrease of $862,667.29)." (Docket No. 82, paragraph 5); (ii) Debtors have not been able to conclude their 341 meeting of the creditors nor have they filed adequate Schedules and/or Statement of Affairs or presented a confirmable plan due to their own failure to provide accurate

---

[1]The order mistakenly states that the Debtors' request for extension of time was denied but what was denied was Banco Popular de Puerto Rico's motion.

disclosure of their assets and liabilities; (iii) Debtors through the operation of various gas stations generate hundreds of thousands of dollars in cash on a monthly basis which is evidenced in their monthly Operating Reports (Docket No. 82, paragraphs 6 &7); (iv) "[a] cash flow of this magnitude requires an adequate system of controls, checks and balances to ensure that the in-coming cash is properly channeled to cover creditors' claims and debtors' legitimate business expenses" (Docket No. 82, paragraph 6); (v) "[g]iven the debtor's proven pattern of evasion, lack of candor, the unending saga of continuance upon continuance of the 341 meeting of creditors, the serial amendments to the Schedules and Statements of Affairs, the debtors' failure to extend the exclusivity period, and the debtors' failure to file a timely Disclosure Statement and proposed Plan of Reorganization" (Docket No. 82, paragraph 13); and (vi) "Toral Petroleum understands that it has shown cause and that conversion is proper under this Court's equitable powers based on the ground that there has been unreasonable delay that is prejudicial to creditors" (Docket No. 82, paragraph 17). On January 11, 2010 the court issued an order and notice setting for February 1, 2010, a hearing regarding Creditor's motion to convert to chapter 7 pursuant to 11 U.S.C. §1112(b)(4) (Docket No. 84).

On January 29, 2010, Debtors filed their Disclosure Statement and their Plan of Reorganization (Docket Nos. 91 &92). Also, on this same date the parties filed the Joint Pre-Trial Report (Docket No. 93). Subsequently, an evidentiary hearing was held on February 1, 2010, regarding Creditor's request for conversion to Chapter 7 or dismissal of the instant case. During the hearing, the U.S. Trustee clarified that thus far, three (3) 341 meeting of the creditors have taken place. The U.S. Trustee stated that the first two (2) meetings took longer because one of the creditors requested that the meeting be conducted in the English language and Debtors choose to use the translation service provided by the Office of the U.S. Trustee. The third meeting was held in the Spanish language. The U.S. Trustee explained that Debtors have numerous real properties that require certain clarifications and that it agrees with Creditor's position that it has not been able to ascertain the true and exact financial condition of Debtors and their assets. The U.S. Trustee also stated that there were certain inconsistencies in Debtors' testimonies which were given at the 341 creditors meetings which needed to be clarified. However, the U.S. Trustee indicated that it will like to benefit from this hearing in order to take its final position on this matter.

The only witness called upon by Creditor to testify was the Debtor, Carlos L. Beltran Rodriguez. Creditor's direct interrogatory consisted in asking Debtor Carlos L. Beltran Rodriguez to name all of the real properties (parcels) it owns and whether the same are mortgaged and the approximate date of the last mortgage payment Debtor made to the mortgagee or secured creditor. Debtor Carlos L. Beltran Rodriguez in a nutshell proceeded to list all of the real properties (parcels) he owns and whether the same were mortgaged. Debtor Carlos L. Beltran Rodriguez testified that he had not made any mortgage payments on the mortgaged properties in approximately 1-2 years. He also testified that he is currently not making any mortgage payments and that he is depositing certain monies into an account. Debtor stated the reason he stopped making the mortgage payments was because there was a decrease in his volume of business, namely the number of gallons sold decreased from approximately 600,000 to 300,000 gallons of gasoline on a monthly basis.  Debtor testified that the summation of the monthly mortgage payments amounted to approximately $75,000.00-80,000.00. Debtor also testified that the IRS had seized approximately $200,000.00 from his bank accounts due to a debt originating from his own personal social security taxes as well as his employees' social security taxes. After these monies were seized by the IRS, Debtor choose not to accept credit cards in his business because he could no longer afford the same. Lastly, Debtor testified that if he sells two (2) or three (3) of his properties he will be able to pay off all of his creditors.

Applicable Law and Analysis

*Cause for Conversion or Dismissal pursuant 11 U.S.C. §1112(b)(4)*

Section 1112(b) of the Bankruptcy Code mandates the bankruptcy court after notice and a hearing to convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause and the case is devoid of unusual circumstances pursuant to 11 U.S.C. §1112(b)(2). 11 U.S.C. §1112(b)(1). The initial burden is on the movant to argue and present evidence by a preponderance of the evidence standard to prove its position that there is cause for either conversion or dismissal of the chapter 11 case, whichever is in the best interests of creditors and the estate. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[4] (16th ed. 2009). "Thus, until the movant carries the burden, the statutory direction that the court 'shall convert the case to a case under chapter 7 or dismiss the case' is not operative." Id. However, after

4

finding cause, the court has broad discretion to determine whether conversion or dismissal is in the best interest of creditors and the estate. See Gilroy v. Ameriquest Mortg. Co. (In re Gilroy), 2008 Bankr. Lexis 3968 (B.A.P. 1st Cir. 2008). However, Section 1104(a)(3) provides that, "on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. §1104(a)(3). Section 1112(b)(4) of the Bankruptcy Code fails to define what the term "cause" means but provides a laundry list of circumstances which constitute "cause" for conversion or dismissal. This list of causes is nonexhaustive, thus a case may be converted or dismissed for other causes. See AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re AmeriCERT, Inc.), 360 B.R. 398, 401 (Bankr. D. N.H. 2007).

Section 1112(b)(4)(J) specifically establishes that cause to dismiss or convert a chapter 11 case includes, "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court." 11 U.S.C. §1112(b)(4)(J). However, only mandatory deadlines established by the court or the Bankruptcy Code constitute cause under 11 U.S.C. §1112(b)(4)(J). See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[6][j] (16th ed. 2009). The period of exclusivity the debtor has to file the plan pursuant to 11 U.S.C. §1121(b) does not constitute a mandatory deadline for purposes of Section 1112(b)(4)(J). Id. ("Although the exclusive period of filing a plan provided by section 1121(d) may provide some weight in determining the 'reasonable period of time' under section 1112(b)(2)(A) in defense of a motion to dismiss or convert, the time limitation upon the privilege of exclusivity is not a 'time fixed' or deadline for purposes of section 1112(b)(4)(J)"). After Debtors' exclusivity period lapsed on December 5, 2009, no creditor filed a plan of reorganization. In the instant case, Debtors filed their Disclosure Statement and Plan of Reorganization on January 29, 2010 (Docket Nos. 91&92), almost  six (6) months after they filed their bankruptcy petition. Thus, this court finds that Creditor's argument under 11 U.S.C. §1112(b)(4)(J) is unfounded, given that Debtors' exclusivity period is not considered a mandatory deadline and Debtors' filed their disclosure statement and plan of reorganization within a reasonable time.

5

The second argument Creditors present for conversion of Debtors' chapter 11 bankruptcy petition to be converted chapter 7 is the inability to effectuate a plan. Prior to the Bankruptcy Abuse Prevention and Consumer Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), "inability to effectuate a plan" was a cause for conversion or dismissal under former 11 U.S.C. §1112(b)(2). BAPCPA deleted this particular "cause" from its enumerated list of causes pursuant to 11 U.S.C. §1112(b)(4). However, the closest analogue to former §1112(b)(2) (or inability to effectuate a plan) is 11 U.S.C. §1112(b)(4)(A) which provides that cause includes, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. §1112(b)(4)(A); See In re DCNC N.C. I, LLC, 407 B.R. 651, 664 (Bankr. E.D. Pa. 2009). At this juncture, Creditor has simply not presented any evidence which would support this contention.

Lastly, Creditor argues that "cause" to convert to chapter 7 exists because there has been an unreasonable delay by the Debtors that is prejudicial to creditors. According to Creditors this unreasonable delay consists in Debtors' amending their Schedules and including additional assets whose value is approximately $165,000.00 and the fact that the 341 creditor's meeting has not been closed. This court notes that an increase in assets of $165,000.00 is immaterial considering that the assets of the estate as per Schedules A & B amount to $37,881,000.00. The Office of the U.S. Trustee in the evidentiary hearing held on February 1, 2010 provided some insight as to why the 341 meeting of creditors had not been closed, namely because in two (2) of the three (3) meetings that were held, the translation services were employed and the U.S. Trustee decided to postpone the scheduling of a continuance of the 341 creditors' meeting until after the evidentiary hearing on the motion to convert to chapter 7 had taken place. Creditor also presented its concern that Debtors' businesses are cash basis and as such require an adequate system of controls and checks and balances to ensure that the incoming cash is properly channeled to cover creditors' claims and Debtors' legitimate business expenses. However, Creditor did not present any evidence to sustain that Debtors had an inadequate system of controls or that there was any type of gross mismanagement of the estate. At this juncture, this court finds that Creditor has not sustained its burden of proving that there has been unreasonable delay by the Debtors that is prejudicial to creditors to the extent that conversion to chapter 7 is

warranted.

Conclusion

In view of the foregoing, the court concludes that Creditor has failed to meet its burden that there is cause to convert this case to chapter 7 pursuant to 11 U.S.C. §1112(b)(4)(J) or for inability to effectuate a plan; and unreasonable delay by the debtor that is prejudicial to creditors.

SO ORDERED.

In San Juan, Puerto Rico, this 7th day of April, 2010.

ENRIQUE S. LAMOUTTE<br>U. S. Bankruptcy Judge